UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

FIORAVANTE SETTEMBRE                                                APPELLANT

v.                                     CIVIL ACTION NO. 3:10CV-185-S

FIDELITY & GUARANTY LIFE INSURANCE COMPANY, et al.        APPELLEE

**MEMORANDUM OPINION**

This matter is on appeal from the February 1, 2010 Memorandum and Judgment of the United States Bankruptcy Court denying the appellant, Fioravante Settembre, a discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(3).

The lengthy history of this adversary proceeding is recounted in the Memorandum of the Bankruptcy Court and need not be restated in full here. We begin with the May 1, 2009 order of this court remanding the matter for trial to allow the appellant to present evidence regarding his level of sophistication, the complexity of his financial situation, the nature of the Settembre Group checking account, and whether there were independent means of substantiating his financial transactions. *Settembre v. Fidelity & Guar. Life Ins. Co.*, 2007 WL 4546669, at *4 (W.D.Ky. Dec. 19, 2007). The matter went to trial, and resulted in the judgment appealed from here.

The court grounded its decision to deny discharge on 11 U.S.C. § 727(a)(3) which provides, in pertinent part, that "[t]he court shall grant the debtor a discharge, unless...the debtor has...failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained..." The court noted that "[t]o avoid a denial of discharge under § 727(a)(3), a debtor's record may be neither (a)

"chaotic or incomplete," (b) in such a condition that a creditor is "required to speculate as to the financial history or condition of the debtor," nor (c) in such a condition that a "creditor [is compelled] to organize and reconstruct the debtor's business affairs." *In re Buzzelli*, 246 B.R. 75, 96 (W.D.Pa. 2000). Bankr. Mem., p. 12. The court stated that the test of the adequacy of the debtor's records is "whether a third party such as a trustee or creditor could determine from those records what was happening in the debtor's business (an objective standard)." *In re Ogden*, 1999 WL 282732, at *13 (10th Cir. BAP 1999). Bankr. Mem., p. 12.

> The bankruptcy court concluded, in pertinent part:
>
> In this case, a third-party could not ascertain how the Defendant obtained his money, or for what purpose, business or personal, the Defendant spent a large portion of his funds. Moreover, while the Defendant offered a smattering of unsubstantiated testimony as to the nature of the transactions, withdrawals and deposits, his testimony lacked credibility....[T]he Defendant demonstrated a rather cavalier attitude that permeated his entire testimony...[T]he Defendant's flippant testimony cannot substitute for financial records...[T]he Defendant contended that he lost the financial documents during a move...[T]his excuse is patently insufficient. *In re Buzzelli*, 246 B.R. 75, 102-104 (Bankr.W.D.Pa. 2000), *accord In re Sethi*, 250 B.R.[831] at 840 [(Bankr.E.D.NY 2000)] (noting that debtor failed to show records "were destroyed or lost due to some event beyond his control, such as fire or theft.").

Bankr. Mem. pp. 12-13. The court then rejected the claims that discharge should also be denied pursuant to 11 U.S.C. §§ 727(a)(4)(D)(fraudulent concealment) and 727(a)(6)(A)(refusal to obey a lawful court order). Bankr. Mem. pp. 13-15. The findings as to the claims of fraudulent concealment and failure to obey a court order were not appealed.

On appeal, this court reviews the findings of fact rendered by the bankruptcy court for clear error. Legal conclusions are subject to *de novo* review. *In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988); *Slodov v. United States*, 552 F.2d 159, 162 (6th Cir. 1977), *rev'd on other grounds* ("[t]his circuit has clearly enunciated that findings of fact of a bankruptcy court should not be disturbed by

the district court judge unless there is 'most cogent evidence of mistake or miscarriage of justice.' [citation omitted]").

Settembre urges that the court erred in concluding that his records were insufficient to ascertain his financial condition. As the court noted, a "sophisticated debtor is generally held to a higher level of accountability in record keeping, and the more complex the debtor's financial situation, the more numerous and detailed the debtor's financial records should be." *In re Sethi*, 150 B.R. at 839. Settembre admits that he is a sophisticated business person (Appellant's Brief, p. 15), but denies that a higher level of recordkeeping should apply to him. *id.*

Despite this admission, Settembre urges that the court committed various errors in its findings concerning his business experience and acumen. Upon review, we find no clear error in the bankruptcy court's findings in this area with the exception of the specific finding that he had check writing authority for InsBanc, Inc. (Bankr. Mem., p. 9). Settembre testified that he did not recall having this authority, but he could not be certain. This fact in no way contradicts or otherwise calls into question the conclusion that Settembre was a sophisticated business man. As already noted, he admitted to being a sophisticated business person at trial. Settembre is college-educated and worked in the insurance industry for over thirty years, during the majority of his career in managerial-level positions. In 2001, he became 50% owner of InsBanc, an S-corporation. He testified that his partner, Eric Anderson, handled the daily funds of the company. However, Settembre held the position of chairman and president/CEO of InsBanc. In 2001 Settembre, Erickson, and InsBanc borrowed $500,000 from Life Event Advantage Division of Life Insurance Company of the Southwest. In 2003, they borrowed $200,000 from Fidelity & Guaranty Life

Insurance Company. They also borrowed $800,000 from Reliastar, $200,000 from the Hartford, and $1,000,000 from National City Bank, all over a 3-year time period.

Settembre had just one bank account in the name of The Settembre Group and used the account for both business and personal expenses.[1] He kept no ledgers. The source of many deposits could not be identified. Many checks were made out to Settembre personally with no notation as to how the money was spent. There were also various wire transfers which contained no notation concerning the purpose for the transfer of funds. Settembre produced no records concerning his brokerage account. He produced some but not all tax returns for the years 2000 through 2005,[2] mostly unsigned and unsupported by documentation. Settembre claimed that his records were lost in a move.

This is not, in this court's view, even a close case regarding the adequacy of Settembre's records. We find that the bankruptcy court concluded upon an ample record that Settembre failed to maintain even minimal documentation concerning his business affairs. "Records are not 'adequate' if they do not provide the trustee or creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable time past to present." *In re Martin*, 141 B.R. 986, 995 (Bankr.N.D.Ill. 1992).

---

[1]Settembre urges on appeals that the Settembre Group account was nothing more than a personal checking account. However, he admitted at trial that while he was CEO of InsBanc he continued to market himself as the Settembre Group, and that he ran business an personal transactions out of the Settembre Group account. Trial Trans., 13:14-21; 48:23-49:1; 65:4-5. Thus we reject this attempted recharacterization of the testimony without further comment.

[2]Settembre notes that the IRS requires the average taxpayer to keep records for only three years. This is not a tax case. 11 U.S.C. § 727(a)(3) requires "enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *In re Strbac,* 235 B.R. 880, 882 (B.A.P. 6th Cir. 1999).

Based upon the delineated deficiencies in the records produced, the bankruptcy court found that "the Defendant chose to intermingle his personal and business checking accounts. When a debtor chooses to use a single checking account for business and personal accounts, a higher level of record keeping should be undertaken to distinguish which checks were written for personal uses and which checks were written for business expenses. *In re Buzzelli*, 246 B.R. at 102-104...Here the Defendant provided incomplete records and anyone seeking an examination of the Defendant's finances would be forced to speculate as to the source of the Defendant's deposits and the ultimate disposition of a large portion of the money." Bankr. Mem., pp. 11-12.

Settembre recites his own self-serving testimony concerning his income and expenditures. However, such testimony is not a substitute for adequate documentation. *In re Sethi*, 250 B.R. at 839; *In re Strabac*, 235 B.R. at 885. Further, the bankruptcy court considered and rejected Settembre's testimony as incredible. We have been shown no abuse of discretion in this conclusion and accept the credibility determination of the bankruptcy court who heard the testimony and observed the witnesses.

Settembre also urges error in the bankruptcy court's decision to exclude the report of his expert witness, accountant Robert F. Kuphal. Kuphal's report consisted of various "compilations." This court is uncertain what these "compilations" contained, but it is clear what they *did not* contain: any expert opinion. He stated in each such compilation:

> A compilation is limited to presenting in the form of financial statements information that is the representation of the individuals whose financial statements are presented. I have not audited or reviewed the accompanying financial statements and, accordingly, do not express an opinion or any form of assurance on them.

The bankruptcy court correctly found that the documents failed to satisfy Fed.R.Bankr.P. 7026, and properly excluded the report and proposed testimony in accordance with Fed.R.Bankr.P. 7037.

These "compilations" failed to offer anything of assistance to the trier of fact. They were found by the bankruptcy court to consist of nothing more than a repackaging of information. In fact, we note that Settembre failed to respond to the motion of the plaintiffs to strike the report, and the court granted the motion to strike. The court declined Settembre's later motion to vacate the order. Settembre has shown no abuse of discretion in the bankruptcy court's decision to exclude Kuphal's report and testimony. *King v. Ford Motor Co.*, 209 F.3d 886 (6th Cir. 2000).

The court concludes that Settembre has failed to identify any clear error in the findings of the bankruptcy court. Discharge was properly denied to the debtor under 11 U.S.C. § 727(a)(3) for failure to maintain adequate financial records. The judgement of the United States Bankruptcy Court will be affirmed. A separate order will be entered this date in accordance with this opinion.